Number 087017, Simmons against the Department of Veterans Affairs. Mr. Cox. Thank you, Your Honor. Of course, Mr. Simmons is contending that the Veterans Court misinterpreted section 1154B related to engaged in combat with the enemy and what that means. Is this an issue you raised below? Because reading the Court of Veterans Claims opinion, it seems to me they were really looking at quite a factual issue, which is whether or not your client engaged in combat. I quite agree. What I'm suggesting, though, is in the decision of the CAVC, they did not go through the steps required in the veteran's right to see whether he was engaged in combat with an enemy under these circumstances. And that's the way I read the CAVC decision, that they never entered into that evaluation to see whether the veteran should have been given the rights and the ability to show that he had engaged in combat with the enemy through 1154B. Tell us briefly what, in your view, they should have done that they didn't do. I think that by taking the – essentially what they did was they said, this veteran never engaged in combat, period. They looked at the BVA decision and said, we find that the facts they've raised are sufficient and therefore we never reach 1154. My contention is that they should have gone through the steps, the various steps that should have been taken up in looking at this. What steps? There are a number of steps, including looking at whether the veteran has put forth a prima facie showing that he was engaged in combat. Isn't that a factual determination? It is not in the beginning because I think that prima facie showing then shifts the burden to the secretary. On what basis do you make that determination? I think it is based on 1154, as I read 1154B. I think that what happens is once the veteran makes prima facie showing that he was in combat – Hasn't this court addressed this issue in Stone v. Nicholson and said very clearly the statute does not provide a relaxed standard of proof for determining whether a veteran engaged in combat? I agree. I certainly agree, but I think in this case, this can be distinguished from Stone in the sense that this veteran has the prima facie showing that he engaged in combat with an enemy. There are historical records that tend to show that, then shifting the burden to the secretary. What records show this veteran engaged in combat? If those records existed, wouldn't they have been found by the administration and wouldn't they have established his combat status? So don't tell us there are prima facie evidence when there isn't prima facie evidence, unless you can show it to us. Please show it to us. Please show us in the record where he engaged in combat. Please show us in the record. I have the appendix in front of me where he engaged in combat. Joint appendix 57 and 58. Let me start with those by saying that the secretary in his brief did not contest that Mr. Simmons was assigned to the 31st Combat Engineer Battalion. On JA57, they indicated that the unit was a Combat Engineer Support Battalion, and in those kinds of missions, they were engaged in combat. Please show me in these documents, I'm at 57 and 58, where it says that Mr. Simmons was engaged in combat. It does not say that. Well, then why did you cite it to me for that proposition? Because Mr. Yesterday you cited to me a brief that had the wrong party's name on it. Now, you're going to have to improve your performance. Don't cite to me something which does not even remotely stand for the proposition. This veteran testified that he had been engaged in combat with the enemy, being fired on during the Tet Offensive and at other times. The historic record also indicated that other cuts of the unit had been engaged in combat at other times. I am suggesting that once the veteran indicated he had been in that Tet Offensive and had been under fire, and the record supported that. What is it? I mean, Judge Rader, I'm asking you again what he asked you. What is it on page 57 and 58 that supports that he was involved? This is the mission of the unit this veteran was in. Well, in the board decision, I mean the CAVC decision, they said the board reviewed the evidence, particularly the operational reports, and then they go through them and say most of the incidents didn't involve Company A, which was Mr. Simmons' company, and that with respect to two notations. And they go through that evidence. And what is it that's unpersuasive, not persuasive in terms of what the board said, that leads you to say that this is a legal issue? I hope that you will agree with me that when the veteran puts forth a prima facie showing of his having been in combat, he said he was in combat, the historical record.  Remember, they're trying to help the veteran. They looked for evidence that he was in combat. They could not find it. You can't find it. You can't show me anything. So why are you arguing this to us? We can't consider facts anyway. I contend that the facts are for a prima facie showing so that we get to the issue of whether the veteran can then take advantage of the presumption of 1154B. And they are not shown as facts per se but to show this prima facie showing so that he can take advantage of his evidence and that part of the historic record here that would indicate what he says is accurate and that he was in combat and that the court failed to interpret 1154B in that sense. In the sense that what? They should have interpreted 1154B so that they would say that whatever it is he put forward and alleged sufficient for a prima facie case? At JA57 there was a sentence that says, the remaining cuts in this reporting period, and by the way the reporting period is 1 May 1971 through October 31, 1971, all encountered enemy attacks in the form of indirect fire attacks and mines and booby traps. Where is that? I'm on page... I'm sorry, JA59. I said 57 but it's on JA59. What I hope I can convince you is that this veteran said, I was in combat. What you just cited us, where is it on the page? I don't have it. Just a moment please. Is that referenced to Company A? Because there are other companies referenced on this page. I think it includes all of the units is the way I interpret it. This is on JA59, under E intelligence, the last sentence of that paragraph. The remaining cuts in this reporting period all encountered enemy activity in the form of indirect fire attacks and mines and booby traps. Detailed intelligence reports are in the after action report of these cuts. Now of course what is missing after the veteran got these documents is these remaining intelligence reports. I think that the veteran has met the steps of showing he was in combat by saying I came under fire during the Tet Offensive. That happens every year perhaps as you know in Vietnam because this is the Lunar New Year and not just one time, the 1968 famous one. I'm saying that this sentence along with what he said, I hope, gives him the presumption of showing he was engaged in combat, therefore allowing him to take advantage of the presumption of 1154B. So you would like us to give this information, these facts, more weight than the board of the CADC was willing to give those? Well, I think that what I'm saying is giving it more weight only leaves me in the factual situation again. Exactly. And so what I'm saying is though that again, this is part of his primeficient evidence to get him to 1154B and the presumption that he was in combat so he can take advantage of the standard of 1154B, engaged in combat with the enemy. Okay, let's hear from the other side. We'll ask them the same questions. Mr. O'Connell. Thank you. May I please report? The government does view this as primarily a factual dispute and that there are no unresolved legal issues that are before the court. But as a matter of fact, in trying to understand how to read 1154B, it does draw a distinction between being an active service and here we have his, at least it was established that his battalion was engaged in combat. Is that right? Whether or not he was personally? It establishes that certainly some of the members of his battalion were at least occasionally in combat while he was in his particular. Well, it doesn't distinguish, does it, in this report? It does not. In the record it just says that the battalion encountered booby traps and indirect fire and so on. What else then would have been required for a member of that battalion to show that this is a prima facie case which would shift the burden to the government? Well, something that would show that Mr. Simmons specifically was in combat. You mean if he had been wounded? Well, it could be he was wounded. It could be independent evidence, testimony from other people. But you're saying his own testimony, no matter what he says, cannot establish that as a member of this battalion he was subject to what the military says the battalion was subject to. Sure. Under the VA regulations, Your Honor, his personal lay testimony is not enough unless he can establish that he was in combat. So again, unless he was wounded or unless one of his companions comes forward and says, I was there and I saw that he was with a group that was shot at, or what? There could be other kinds of evidence. It could be, I mean, one of his problems here was that his service specialty was wheeled vehicle mechanic. If his occupational specialty was something that would be more indicative of combat, that would be one thing. If he had combat infantry men's badge, that would be another thing. So it could be those, any kind of records like that, testimony, medals, records of wounds. It could be an assortment of things. Now he says he was shot at. So you're saying that anything that the battalion testifies to is automatically disbelieved? No, no. It would be some evidence, but it's not enough evidence to get him over the bridge. That's why I was asking. Yes. What else? Whatever he has to say, I gather is inadequate. Is that right? We're talking about corroboration? If the only thing in evidence is the veteran's testimony... Well, it's not the only thing, because we have the military statement that his battalion was engaged in combat. You're saying that he stayed home as an engineer, and he says, I didn't stay home. I was on the trucks that were shot at. And whose burden is it to show that when the trucks are moving through a combat zone, for example, they leave their mechanics at home so that they don't get shot at? Well... I mean, he says that he was there. Right. And you say he wasn't there, or we won't assume he's there, or we won't believe his statement that he was there because he wasn't wounded. Right, right. Is that right? Well, we say that his simple testimony is not enough, and so what the board has to do is they have to look at the complete record. But that's exactly what Mr. Cox complains about. Right. He says the burden shifted to the board to come forward to show, no, he wasn't on the trucks, and no, he wasn't shot at. Your Honor, that's what's stone resolved, that unless he's a combat veteran, he doesn't get that relaxed evidentiary standard. This is all completely factual, but what the board did here was that they looked at all of the evidence. You're saying unless he's a combat veteran, he doesn't get a relaxed standard to show he was a combat veteran. He doesn't get, right. Is that right? No. It can't be right. Right. No. If he's not a combat veteran, then he has to show independent, credible evidence to evidence that it's at least as likely that he served in combat. That's the point that I'm really trying to understand. You're saying he's not a combat veteran, although his battalion was in combat, because what? Well, the records show that members of his battalion, and as the record shows, there's more than 800 people in the battalion, and that during the course of this one-year period, there is evidence that a few incidents involving his company, but there's nothing in the record that indicates that he specifically was in combat. But I think we have to look at what the board did here. Well, what's in the record is his testimony. Right. That's what we're disbelieving. Right. Well, we're not disbelieving it. I mean, I'm reluctant to engage here because it really seems to me like we are sort of dealing with the facts, but it seems to me that on page 20 of the CABC decision, they go through the board's findings and that it doesn't suggest to me that they listened to him and they said, well, forget it, you haven't given us enough. It seems to me that they did review all of these records, that they found that the 31st Battalion, none of the reported incidents involving companies other than A occurred near any location where A was assigned, and that there were two notations of combat activity involving company A, and then they go through those two notations and they say that those aren't sufficient to corroborate because none of his stated stressors were related to these two events. So it doesn't seem to me that the board just ignored it and said, well, he said it and he hasn't been able to prove it and the story is over. It seems to me they reviewed the record looking for some information and didn't find it. That's right. That's exactly what they did. So you're saying the statute requires a direct relationship, although it doesn't say that, between some combat event and the stressor rather than having been in combat or in a combat situation and then experienced the stressor or the result of the stressor. I think there was no question, but that this particular veteran was experiencing difficulties when he came back. It's entirely a question of whether he can tie it to a combat incident. I believe he does have a diagnosis, yes, your honor. So the question is exactly, was there an in-service stressor? Yes. But the statute doesn't say that. It says who engaged in combat and who turns out to have the diagnosis. But it doesn't say by statute that you have to show because you were shot at 17 times, therefore the diagnosis is due to that. No, the statute does not say that, but the VA regulation, which has been upheld by the court, says that his lay testimony is not sufficient for establishing service connection because there are other areas in which lay testimony is stated to be explicitly sufficient. Sure. What does it mean when the board says that none of his stated stressors were related to these two events? Well, again this is factual, but we can go through it. He started out with the questionnaire, which is on page 26 of the appendix, and he gave three reasons for three events which caused PTSD. We're now doing something outside of our jurisdiction, aren't we? Well, I think that this... We don't have any jurisdiction to review these facts at all. We don't think you do, your honor. Well, we don't. The statute says we don't. I mean, you can go ahead. I think you're responding to a question, so I hate to interrupt, but it's just... I think actually Judge Crouse mentioned that herself, that we're really beyond our statutory mandate, but please proceed. Well, I think briefly what they mean is that the story changed over time and that when things were disproved that the stories changed, and the board made a credibility determination that these events did not occur, as Mr. Simmons said. So I'd ask the court to affirm the veterans' court. Thank you. Thank you, Mr. O'Connell. Mr. Cox? Mr. Cox, your reply brief is five pages, four pages of which quote from a dissent in this court, particularly well-reasoned dissent because it's from Judge Newman, who always is particularly careful in her reasoning. But your whole brief is, you ask us to adopt a dissent. Can this court adopt a dissent? Under the circumstances here, we're saying this is the right case where you can do that. Can this court ever overrule a prior panel and adopt a dissent? Let me put it in... As a panel, can we overrule a panel? Are you asking us to go on bonk? I'm not. I think that this is the wrong case. Well, then you can't ask us to adopt a dissent. A dissent by its nature is a losing position, however well-reasoned and how thoughtful it is. And this is very well thought out. But we can't do it, can we? The only thing you could have said, which you didn't say, is therefore you ask us to go on bonk and consider as a whole court whether we should adopt a different standard. But you don't do that. I did not. And inartfully, I did not. I still ask the court to consider that this is a case in the argument... We can't adopt this dissent, so this brief is useless, isn't it? I don't think so. But I am going to say that because I'm asking the court to consider that this is the right case in which to accept a dissent in deciding this veteran's case. So you're acknowledging, you're asking us to do something that we don't have the authority to do. Right? Well, you really have to either ask us to take the case in back and change the approach or distinguish, state established that it's distinguished from the situation in which that previous case was decided. Obviously, I'm teetering here and I want to say that the latter. I hope this is the right case. What's the difference? And the problem you've got is the difference is you're going to start arguing to us facts. The facts are a little different than the other facts. And then we have to say to you what Judge Prost said to you when she started. We have no authority to review those facts. Now, see, you've got to be ready to handle all this when you stand up here. I certainly agree. Aren't we at a point, though, Your Honor, where what we're really talking about here is the court rejected this veteran's proffer of evidence by saying it's not specific enough. Now, I just heard the argument where the point was that my colleague here was saying that the court disapproved this evidence. I'm not sure that's the case. I think what happened was they said this is... By the way, the stressors he cites are seeing a fellow soldier taking drugs. Is that combat? I did not cite that in the brief, I think. That's one of his three in-service stressors that he identified for PTSD. This veteran has many. I tried to rely on the ones that said he was fired on by the enemy in the Tet Offensive and at other times, trying to put it down to one that I could see that was specific under these circumstances. He had three stressors. The second one was seeing a fellow soldier crushed by a truck. There was one in which he said he was unable to return fire or help his friends. I would also assert that in separate testimony, he indicated during the Tet Offensive he had been fired upon at that time and at other times, and I tried to take the facts not for the purpose of showing facts, but to show the prima facie showing he must show in order to take advantage of 1154B. Isn't this case one of by saying this veteran did not show enough specificity, he had a lack of specificity in light of 1154B, isn't the court really then saying, and not as he has pointed out, that it was disapproved? I don't think it was disapproved. They just said it's not specific enough. But once he's put this prima facie showing forward, this proffer on the table, then it seems to me the burden shifts to the Secretary and the Secretary has to show by clear and convincing evidence that is not the case. Is that consistent with our existing case law, and if so, what case do you rely on? I think it is Swozy, if I'm not mistaken. Let me look here. Bear with me a moment. The Veterans Court cited Swozy, its own case, holding that corroboration as an alleged stressor does not demand corroboration of every detail, including the veteran's personal participation. And I think that again that shows the veteran should be entitled to take advantage of 1154B. So applying that case to the facts in this case, you suggest the Veterans Court erred? That's correct. Do we have jurisdiction to review the application of a lot of facts? Do not, but I think this is a misinterpretation of 1154B. Did you cite that case in your brief? I did not, but it is found within the CAVC decision, which is on appeal. Okay. Thank you, Mr. Cox. Thank you very much. Thank you, Mr. O'Connell. The case is taken under submission.